UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENZEL SAMONTA RIVERS,

           Plaintiff,

v.                                               Case No. 23-cv-503-pp

TORRIA VANBUREN
and ROBERT RYMARKEWICZ,

           Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING WITHOUT PREJUDICE PLAINTIFF'S MOTION TO APPOINT COUNSEL (DKT. NO. 11) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

      Denzel Samonta Rivers, who is incarcerated at the Milwaukee Secure Detention Facility and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. This order resolves the plaintiff's motion for leave to proceed without prepaying the filing fee and his motion to appoint counsel, dkt. nos. 2, 11, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On April 24, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $34.35. Dkt. No. 5. The court received that fee on May 12, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

**II.    Screening the Complaint**

    A.    Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts,

2
Case 2:23-cv-00503-PP    Filed 08/04/23   Page 2 of 17   Document 13

"accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint concerns events that allegedly occurred while the plaintiff was incarcerated at Waupun Correctional Institution. Dkt. No. 1 at 2. It names as defendants Dr. Torria VanBuren and Captain Robert Rymarkewicz, both of whom work at Waupun. Id. at 1–2. The plaintiff says that VanBuren was a Psychological Service Supervisor at Waupun in September 2021. Id. at ¶3.

The plaintiff alleges that on September 2, 2021, he was in the segregation unit at Waupun on clinical observation status. Id. at ¶1. He says

he was placed on observation status on August 13, 2021, after he told a non-defendant doctor that he planned to overdose on medication. Id. at ¶2; id. at 8 (observation notes from Aug. 13, 2021). The plaintiff says that because he was on clinical observation status, VanBuren was required to review the clinical observation logs about his status. Id. at ¶4; id. at 9 (Aug. 13, 2021, notice of review of observation status). He alleges that VanBuren was aware of his history of being placed on observation status at Waupun "for being a danger to himself." Id. at ¶5. The plaintiff says that each observation cell has "a fully operating camera" that recorded him "being labeled a threat to self for claims of overdosing;" he alleges that Vanburen was aware that in order for his cell to be a safe place, the plaintiff was allowed to have only a handful of items in his cell. Id. at ¶6.

The plaintiff alleges that on August 27, 2021, VanBuren evaluated him and determined that he should remain on observation status to ensure his safety from the suicidal thoughts he'd expressed. Id. at ¶7; id. at 10 (VanBuren notes of Aug. 27, 2021). He says Rymarkewicz was present during the evaluation and was wearing an active and recording body camera. Id. at ¶8; id. at 11 (observation notes showing "RHU Captain" was present). The plaintiff asserts that Rymarkewicz retaliated against him by telling VanBuren that the plaintiff had told security staff he "was no longer experiencing suicidal ideation." Id. at ¶9. He says Rymarkewicz told VanBuren this so she would remove the plaintiff from observation status "under means to harass plaintiff and retaliate against plaintiff for prior filings against" Rymarkewicz. Id. at ¶10.

The plaintiff alleges that on September 28, 2021, he challenged VanBuren and Rymarkewicz's August 27, 2021 report stating he no longer needed to remain on observation status. Id. at ¶11. He says he filed a DOC-3484 form claiming that Rymarkewicz told the plaintiff that he "must have been mistaken" after the plaintiff asked Rymarkewicz about his report that the plaintiff was no longer suicidal. Id.; id. at 12–13 (DOC-3484 form dated Sept. 28, 2021). The plaintiff alleges that on August 30, 2021, VanBuren became aware that the plaintiff had expressed thoughts of self-harm to a non-defendant doctor. Id. at ¶12. VanBuren verified the plaintiff's continued observation status as of August 30, 2021. Id.; id. at 14 (observation notes of Aug. 30, 2021). The next day, a non-defendant doctor documented that the plaintiff still expressed suicidal thoughts and refused to continue an evaluation, so she recommended he remain in observation. Id. at ¶13; id. at 16 (observation note of Aug. 31, 2021). The plaintiff says VanBuren was again "made aware" of his continued placement on observation status. Id.

On September 1, 2021, VanBuren "was made aware" that the plaintiff refused an evaluation with a non-defendant doctor, who again retained the plaintiff's placement on observation status to ensure his safety from self-harm. Id. at ¶14; id. at 17–18 (observation note from Sept. 1, 2021). On September 2, 2021, VanBuren evaluated the plaintiff for his fifteen-day observation review, but the plaintiff refused to participate because he had "shut down mentally." Id. at ¶15. The plaintiff says VanBuren knew the plaintiff soon would require outside evaluation to determine why he could not be taken off observation

5

status. Id. at ¶16. He claims VanBuren harassed him during the evaluation despite knowing about his mental health history and ongoing struggles with self-harm. Id. at ¶¶16–18. The plaintiff says he "was verbally non-responsive" to VanBuren, and she responded by removing him from observation status "without providing [him] a safety plan to guarantee Plaintiff's safety." Id. at ¶19. He says VanBuren knew he had plans to overdose, which led to his initial placement on observation status, but she nonetheless removed him from observation in the morning of September 2, 2021. Id.

The plaintiff says that around noon the same day, a non-defendant officer performing his rounds saw the plaintiff with five to six "round shaped pills in the palm of [his] hand." Id. at ¶20. The plaintiff immediately ingested the pills "in a[n] attempt to commit suicide and was removed from observation cell" and placed in a holding cell for evaluation by medical staff and psychological staff. Id.; id. at 21 (Sept. 2, 2021 incident report). The plaintiff says the pills were Trazadone and Guanfacine, which were prescribed to decrease his daily activities and bodily functions. Id. at ¶21. He says a non-defendant doctor placed the plaintiff back on observation status from September 2 to 8, 2021 to continue monitoring his safety and stability. Id. at ¶¶22, 24; id. at 22 (observation note of Sept. 2, 2021). A non-defendant nurse treated the plaintiff for his overdose. Id. at ¶23. The plaintiff filed a separate nurse triage form, which shows that he told the nurse "that he took 13 pills in total. 10 Trazodone and 3 Guaificine [sic]." Dkt. No. 10-1.

6
Case 2:23-cv-00503-PP   Filed 08/04/23   Page 6 of 17   Document 13

The plaintiff says that on September 13, 2021, he filed an institutional complaint about being taken off observation status on September 2, 2021. Dkt. No. 1 at ¶25, p.23–24 (complaint summary report). A complaint examiner dismissed the complaint, the plaintiff appealed and a corrections complaint examiner dismissed the appeal. Id. at ¶25, p.24. The Office of the Secretary affirmed the dismissal of his appeal in November 2021, which the plaintiff says exhausted his administrative remedies. Id. at ¶25, p.25.

The plaintiff says that on August 13, 2021, before the above-described events, he sent a letter to Madison authorities about VanBuren not providing him adequate mental-health treatment. Id. at ¶26. He says the authorities spoke with VanBuren, who then rebuffed him at his cell so that other incarcerated persons and staff could hear her discuss his mental health. Id. He filed a complaint about this encounter, which he claims was the basis for VanBuren's actions on September 2, 2021. Id. He claims she retaliated against him for his complaints by removing him from observation status without speaking to him first. Id. The plaintiff says that he similarly filed complaints against Rymarkewicz about issues related to the showers and COVID-19 protocol at Waupun. Id. at ¶27. He claims that Rymarkewicz's actions on August 27, 2021 were in retaliation for the plaintiff filing the previous complaints. Id.

The plaintiff claims that both defendants were aware of his history of mental health difficulties when they retaliated against him. Id. at ¶28. He says they made no attempt to protect him from his risk of self-harm. Id. He claims

that because of their actions, he suffered stomach aches, headaches and dizziness. Id. at ¶30. He seeks compensatory and punitive damages. Id. at 26.

C. Analysis

The plaintiff seeks to proceed on claims of deliberate indifference and retaliation. The court analyzes the plaintiff's allegations of deliberate indifference under the Eighth Amendment, which prohibits cruel and unusual punishments. See Estelle v. Gamble, 429 U.S. 97, 104 (1976). An Eighth Amendment claim consists of both objective and subjective components. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To satisfy the objective component, an incarcerated person must show that he "is incarcerated under conditions posing a substantial risk of serious harm." Id. The risk of harm may come from the person's act or threat of self-harm "up to and including suicide." Miranda v. County of Lake, 900 F.3d 335, 349 (7th Cir. 2018). The subjective component requires an incarcerated person to demonstrate that the official acted with the requisite intent, that is, that he had a "sufficiently culpable state of mind." Farmer, 511 U.S. at 834. A prison official shows deliberate indifference when he "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk." Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015) (citing Farmer, 511 U.S. at 837).

The plaintiff alleges that Rymarkewicz was present on August 27, 2021, when VanBuren evaluated him to determine if he needed to remain on observation status. He says Rymarkewicz knowingly and falsely told VanBuren that the plaintiff had reported no longer feeling suicidal so that VanBuren

would remove the plaintiff from observation status. VanBuren removed the plaintiff from observation status, but he was placed back on observation status on August 30, 2021. The plaintiff does not allege that he suffered any harm between August 27 and 30, 2021, while he was not on observation status. But the court must accept as true for the purposes of screening that Rymarkewicz was aware the plaintiff posed a risk of harm to himself and disregarded that risk by falsely telling VanBuren that the plaintiff did not pose a risk to himself. The court will allow the plaintiff to proceed on this claim.

The plaintiff's deliberate indifference claim against VanBuren is related to his September 2, 2021 removal from observation status. The plaintiff says VanBuren knew that outside officials would soon be reviewing the plaintiff's observation status, and she knew he had made plans to overdose once he was no longer in observation. He alleges that VanBuren disregarded that known risk and ordered the plaintiff removed from observation. Once he was no longer in observation, he ingested five to six pills and required medical treatment. Accepting these allegations as true, the court finds that the plaintiff sufficiently states a claim of deliberate indifference against VanBuren. The court will allow him to proceed on this claim.

The court analyzes the plaintiff's allegation of retaliation under the First Amendment. See Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). To state a claim of retaliation, the plaintiff must allege that "he engaged in a protected activity," "he suffered a deprivation likely to prevent future protected activity," and "his protected activity was a motivating factor in the defendants' decision

to retaliate." Daugherty v. Page, 906 F.3d 606, 610 (7th Cir. 2018) (citing Perez, 792 F.3d at 783).

The plaintiff says that Rymarkewicz lied about his suicidal state on August 27, 2021, and that VanBuren removed him from observation on September 2, 2021, because he filed institutional complaints against them before those dates. The filing of previous complaints generally is protected activity. See Holleman v. Zatecky, 951 F.3d 873, 878 (7th Cir. 2020); Pearson v. Welborn, 471 F.3d 732, 741 (7th Cir. 2006). The plaintiff's allegations satisfy the first element of a retaliation claim.

The plaintiff alleges that the defendants took their adverse actions not only *after* he filed the previous complaints but also *because* he filed those previous complaints. That satisfies the third element of a retaliation claim. See Winston v. Fuchs, 837 F. App'x 402, 404 (7th Cir. 2020) (citing Nieves v. Bartlett, ___ U.S. ___, 139 S. Ct. 1715, 1722 (2019)).

To satisfy the second element, the plaintiff's allegations must pass an objective test: "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity.'" Douglas v. Reeves, 964 F.3d 643, 646 (7th Cir. 2020) (quoting Surita v. Hyde, 665 F.3d 860, 878 (7th Cir. 2011)). Because this standard is objective, "a specific plaintiff's persistence does not undermine his claim." Id. (citing Holleman v. Zatecky, 951 F.3d 873, 880 (7th Cir. 2020)). That means that even though the plaintiff later filed a complaint against VanBuren for removing him from observation status on September 2, 2021, the court still may conclude

that her actions were likely to deter an ordinary person from continuing to file complaints.

The court finds that the plaintiff sufficiently alleges a claim of retaliation against Rymarkewicz for his actions on August 27, 2021, and against VanBuren for her actions on September 2, 2021. The court will allow him to proceed on these claims under the First Amendment.

### III. Motion to Appoint Counsel (Dkt. No. 11)

On June 20, 2023, the court received the plaintiff's motion to appoint counsel to represent him in this lawsuit. Dkt. No. 11. The plaintiff says he cannot afford counsel, that his imprisonment will make litigating his case difficult on his own, that his case involves complex issues but he has limited law library access and legal knowledge and that counsel is better equipped to handle a trial in this case. Id. The plaintiff attached exhibits, letters he sent to three attorneys in the area asking them to take his case and assist him. Dkt. No. 11-1. He says the attorneys did not reply to his letters. Dkt. No. 11.

In a civil case, the court has the discretion to recruit counsel for individuals unable to afford counsel. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866–67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Eagan v. Dempsey, 987 F.3d 667, 682 (7th Cir. 2021) (quoting Pruitt v. Mote, 503 F.3d 647, 654–55 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel. Pickett v. Chi. Transit Auth., 930 F.3d 869, 871 (7th Cir. 2019). "This is a mandatory, threshold inquiry that must be determined before moving to the second inquiry." Eagan, 987 F.3d at 682. To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1) the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

"The second inquiry requires consideration of both the factual and legal complexity of the plaintiff's claims and the competence of the plaintiff to litigate those claims." Eagan, 987 F.3d at 682. When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell v. Parish, 923 F.3d 486, 490 (7th Cir. 2019). The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery,

12
Case 2:23-cv-00503-PP    Filed 08/04/23    Page 12 of 17    Document 13

and putting on a trial." Id. at 490–91. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has satisfied the first of these inquiries. He attached letters that he says he mailed to three attorneys in the area, but he did not receive responses from any of them. Because he did not receive any response, the court cannot determine the reasons the attorneys declined to represent him. The court nonetheless finds that the plaintiff's efforts to obtain counsel on his own satisfy the first requirement to court recruitment of counsel.

But the plaintiff has not satisfied the second requirement. The plaintiff says he needs recruited counsel because he cannot afford to hire counsel on his own, his case is complex and he has limited legal knowledge and resources. These are the same reasons most incarcerated litigants give for requesting the assistance of counsel. They are not unique to this plaintiff or to this case. The court understands the difficulty incarcerated persons face litigating cases on their own. But as the court noted above, the plaintiff is not entitled to an attorney to represent him in this civil case, and there simply are not enough attorneys willing and able to represent *pro se* plaintiffs. This plaintiff also is not new to civil legal proceedings. This is the twelfth civil lawsuit he has filed in the

last five years in this district alone, some of which reached a settlement in his favor. He also has another open case before this court. See Case No. 23-cv-453-pp. That the plaintiff is very familiar with civil proceedings in this district weighs against providing him one of the few limited attorneys willing to accept court recruitments, especially at the outset of the case. That the plaintiff is on his own is not a sufficient basis for the court to conclude that he needs counsel to litigate his claims effectively.

The plaintiff also asserts that counsel is better suited to gather and present evidence and cross examine witnesses at trial. That may be true, but as the plaintiff is aware from his other cases, there is no guarantee that this case will make it to trial. In this order, the court is ordering service on the defendants so they can respond to the plaintiff's complaint. As this plaintiff knows well, the parties will have months after the defendants respond to gather evidence and file dispositive motions. If the plaintiff successfully proceeds beyond that stage, then a trial is *possible* but again is not a guarantee.

As the case progresses, the legal and factual issues may become too complex for the plaintiff, his circumstances may change or he may find himself unable to obtain the information he believes he needs to prove his claims. Should that occur, or if this case reaches trial, it may be appropriate to recruit counsel to represent the plaintiff. But at this early stage of the proceedings, the court has no reason to conclude that the plaintiff requires the assistance of counsel to present his case. The court will deny the request for assistance of

counsel without prejudice. That means the plaintiff may renew his request for counsel at a later date, if he still believes he needs assistance.

## IV. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES WITHOUT PREJUDICE** the plaintiff's motion to appoint counsel. Dkt. No. 11.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendants Torria VanBuren and Robert Rymarkewicz at Waupun Correctional Institution. Under the informal service agreement, the court **ORDERS** those defendants to respond to the complaint within sixty days.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$315.65** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Milwaukee Secure Detention Facility.

The court **ORDERS** that the parties must not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and completing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

PLEASE DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

16
Case 2:23-cv-00503-PP   Filed 08/04/23   Page 16 of 17   Document 13

transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 4th day of August, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**