UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DENZEL SAMONTA RIVERS,

                Plaintiff,

v.                                                      Case No. 23-cv-503-pp

TORRIA VAN BUREN
and ROBERT RYMARKEWICZ,

                Defendants.

**ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DKT. NO. 24), DENYING AS MOOT PLAINTIFF'S MOTIONS FOR INJUNCTIVE RELIEF (DKT. NO. 23), TO APPOINT COUNSEL (DKT. NO. 28), TO VOLUNTARILY WITHDRAW CLAIM UNDER STIPULATIONS (DKT. NO. 39) AND DISMISSING CASE WITH PREJUDICE**

        The plaintiff has filed a motion for preliminary or permanent injunctive relief, dkt. no. 23, for appointment of counsel, dkt. no. 28, and to voluntarily withdraw his claim under stipulations, dkt. no. 39. The defendants have moved for judgment on the pleadings. Dkt. No. 24. The court will grant the defendants' motion, deny the plaintiff's motions as moot and dismiss the case.

**I.    Procedural History**

        On April 19, 2023, the court received plaintiff Denzel Samonta Rivers's *pro se* complaint under 42 U.S.C. §1983, alleging that the defendants had violated his federal rights from August to September 2021, while he was incarcerated at Waupun Correctional Institution. Dkt. No. 1. On August 4, 2023, the court screened the complaint and allowed the plaintiff to proceed on Eighth Amendment claims that the defendants were deliberately indifferent to

his risk of self-harm when they removed him from observation status on August 27 and September 2, 2021. Dkt. No. 13 at 8–9. The court also allowed the plaintiff to proceed on a First Amendment claim that the defendants intentionally disregarded his risk of self-harm in retaliation for previous lawsuits he had filed against them. Id. at 9–11.

On October 3, 2023, the defendants filed an answer to the complaint. Dkt. No. 19. They attached a copy of a document titled "Mutual Release and Settlement Agreement," which the plaintiff had signed on May 10, 2022. Dkt. No. 19-1. The next day, the court issued a scheduling order setting deadlines for the parties to complete discovery and file dispositive motions. Dkt. No. 20.

On November 15, 2023, the court received the plaintiff's motion for preliminary or permanent injunctive relief. Dkt. No. 23. Two days later, the court received the defendants' motions for judgment on the pleadings, dkt. no. 24, and to stay the deadlines entered in the scheduling order, dkt. no. 26. The court ordered the plaintiff to respond to the defendants' motion for judgment on the pleadings by December 8, 2023. Dkt. No. 27. The court granted the defendants' motion to stay the deadlines pending a decision on their motion for judgment on the pleadings. Id. On November 27, 2023, the court received the plaintiff's motion to appoint counsel. Dkt. No. 28. The court granted the plaintiff's request for additional time to respond to the defendants' motion for judgment on the pleadings, dkt. no. 30, and gave the defendants additional time to respond to the plaintiff's motion for injunctive relief, dkt. no. 32. The defendants filed their response on December 19, 2023. Dkt. No. 33. On

December 28, 2023, the court received the plaintiff's response to the defendants' motion for judgment on the pleadings. Dkt. No. 35. The defendants did not respond to the plaintiff's motion to appoint counsel.

## II. Defendants' Motion for Judgment on the Pleadings (Dkt. No. 24)

The defendants move for judgment on the pleadings on the ground that the settlement agreement attached to their answer applies to the plaintiff's claims. Dkt. No. 25. They assert that the settlement agreement bars the plaintiff from bringing his claims against the defendants, and they ask the court to dismiss the case with prejudice. Id.

### A. The Parties' Positions

The defendants provide background for their motion. They observe that according to the Wisconsin Offender Locator website, the plaintiff was housed at Waupun from January 2021 to October 2021 and has been incarcerated at Milwaukee Secure Detention Facility since October 2022. Id. at 1–2 & n.1 (https://appsdoc.wi.gov/lop/home/home). The defendants assert that the plaintiff has a "litigious habit;" he's filed "at least twelve federal and ten state court actions alleging misconduct by prison officials" since 2015. Id. at 2 & n.2 (listing cases). The defendants assert that the plaintiff "entered into two global settlement agreements resolving most of his federal claims." Id. at 3. The plaintiff was represented by counsel when he signed the first agreement, which resolved five of the plaintiff's federal cases before this court. Id.; see Rivers v. Jenson, Case No. 19-cv-842-pp, Dkt. No. 24.

The second settlement is the one at issue in the defendants' motion. This agreement resolved another five of the plaintiff's federal cases. Dkt. No. 25 at 3; Dkt. No. 19-1. The State of Wisconsin agreed to pay the plaintiff $10,000; in exchange, the plaintiff agreed to dismiss those five cases and agreed to "release . . . the State [and its agents] . . . from any and all action or actions, cause or causes of action . . . based on any acts or omissions on or before the date this Agreement is fully signed by all parties." Dkt. No. 25 at 3 (quoting Dkt. No. 19-1 at 2, ¶2). The plaintiff signed the settlement agreement on May 10, 2022. Dkt. No. 19-1 at 4.

The defendants recount that the plaintiff brought this lawsuit on April 19, 2023. Dkt. No. 25 at 3 (citing Dkt. No. 1). The lawsuit alleges that the defendants—Waupun prison officials—failed to prevent the plaintiff from self-harming in August and September 2021. Id. at 3–4. The defendants emphasize that this was approximately nine months *before* the plaintiff signed the settlement agreement. Id. at 4. They assert that the settlement agreement "unambiguously releases all claims that arose before May 10, 2022," which includes the alleged events that occurred in August and September 2021. Id. at 5. The defendants contend that even if the plaintiff "argue[s] that he did not intend to release the present claims in the settlement agreement . . . the unambiguous language of the settlement agreement" governs and defeats any "extrinsic evidence of his own intent." Id. at 5–6 (citing Huml v. Vlazny, 293 Wis. 2d 169, 197 (Wis. 2006)).

The plaintiff concedes that he signed the settlement agreement on May 10, 2022. Dkt. No. 35 at 1. He says that he did not have counsel when he signed it. Id. He asserts that he "was of knowledge" that the settlement agreement applied to the five cases pending at the time he signed the agreement and that it applied only to the involved State defendants. Id. (capitalization omitted). He says it was his belief that he "signed to forever Discharge" only those "released parties" and that he would be "barred from bringing any civil claim against only the said parties within" those five cases. Id. (capitalization omitted). He reiterates that the language of the settlement agreement "caused for plaintiff to be of knowledge that 'the parties' . . . that were involved within the five civil claims to be settled" were the only ones that he was releasing from future liability. Id. at 2 (capitalization omitted). The plaintiff says that he has not "brought a civil claim against any released party involved in the five civil claims plaintiff released on May 10th, 2022 by signature without counsil [*sic*] present." Id. He says the only defendant in this case who was included in the settlement is Rymarkiewicz, who the court dismissed as a defendant in the screening order in a previous case. Id. (citing Rivers v. Rymarkiewicz, *et al.*, Case No. 21-cv-763).

The defendants reply that the plain language of the settlement agreement governs and defeats the plaintiff's assertion that he misunderstood its meaning. Dkt. No. 36. They cite Oliver v. Jess, Case No. 21-C-653, 2022 WL 1555241, at *2 (E.D. Wis. May 17, 2022), in which another court in this district rejected an incarcerated person's nearly identical argument challenging a nearly identical settlement agreement. Id. at 2. They ask the court to reject the

plaintiff's argument, enforce the settlement agreement, grant their motion and dismiss the case with prejudice. Id.

On January 22, 2024, the court received the plaintiff's "second response to defendants brief in support of motion for judgment on the pleading Docket #36." Dkt. No. 37. The plaintiff's filing is a surreply to the defendants' reply brief. Neither the Federal Rules of Civil Procedure nor this court's Civil Local Rules contemplate surreplies, and the plaintiff did not seek permission from the court to file it. "'The decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief.'" Watt v. Brown County, 210 F. Supp. 3d 1078, 1082 (E.D. Wis. 2016) (quoting Meraz-Camacho v. United States, 417 F. App'x 558, 559 (7th Cir. 2011)). The defendants did not raise new arguments in their reply brief, but they do discuss for the first time the Oliver case, which they did not cite in their principal brief. The court will consider only the portion of the plaintiff's surreply that responds to the defendants' reliance on Oliver.

The plaintiff asserts that, unlike the plaintiff in Oliver, he did not file a separate statement declaring that he did not understand the settlement agreement and did not intend to release all other claims. Dkt. No. 37 at 1. But he reiterates that he "is of knowledge that Plaintiff agreed to voluntarily dismiss these five claims forever in exchange for 10 thousand dollars and not dismiss any other claims that do not involve the defendants in the five claims plaintiff voluntarily dismissed." Id. (capitalization and underlining omitted).

B.   Legal Standard

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." The court may grant the motion only if "it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for relief and the moving party demonstrates that there are no material issues of fact to be resolved." Moss v. Martin, 473 F.3d 694, 698 (7th Cir. 2007).

As is true when the court considers a motion to dismiss under Rule 12(b)(6), the court may not look beyond the pleadings in ruling on a motion under Rule 12(c). See Fed. R. Civ. P. 12(d); United States v. Wood, 925 F.2d 1580, 1581 (7th Cir. 1991). The pleadings include the complaint, the answer and any "written instrument that is an exhibit to a pleading." See Fed. R. Civ. P. 7(a), 10(c); Geinosky v. City of Chicago, 675 F.3d 743, 745 n.1 (7th Cir. 2012). Neither party challenges the accuracy and validity of the settlement agreement, and neither party challenges the court's consideration of the settlement agreement as part of the answer.

The defendants assert that the plaintiff's claims against them are barred because under the settlement agreement he signed on May 10, 2022, he released the defendants from liability for any events that occurred before that date. Release of a claim is an affirmative defense. United States v. Rogers Cartage Co., 794 F.3d 854, 860 (7th Cir. 2015). Under Wisconsin law, "[a] release of claims is a contract," Love v. Med. Coll. of Wis., 350 F. Supp. 3d 730, 735 (E.D. Wis. 2018) (citing Archdiocese of Milwaukee v. Doe, 743. F.3d 1101,

1106 (7th Cir. 2014)), and the court must apply Wisconsin state law to interpret the release of claims under the settlement agreement. See Buford v. Goeser, Case No. 23-1395, 2023 WL 8274531, at *1 (7th Cir. Nov. 30, 2023) (citing Carr v. Runyan, 89 F.3d 327, 331 (7th Cir. 1996)).

Wisconsin courts "give contract terms their plain or ordinary meaning." Id. (citing Huml, 293 Wis. 2d at 196). When a contract is unambiguous, the court looks only to "the four corners of the contract, without consideration of extrinsic evidence." Huml, 293 Wis. 2d at 197. "Absent ambiguity, it is improper [for a court] to consider extrinsic evidence of intent." Id.; see also Oliver, 2022 WL 1555241, at *2 (citing United States v. Ettrick Wood Products, Inc., 916 F.2d 1211, 1219 (1990) ("Under Wisconsin law, when the language of a settlement agreement is clear on its face, a court must assume that the language represents the parties' intent and must apply it as written.").

    C.    <u>Analysis</u>

The defendants assert that the settlement agreement unambiguously releases *all* claims that arose before May 10, 2022, when the plaintiff signed it. They contend that this includes all claims against all defendants named in the five cases that the plaintiff settled in exchange for the $10,000 payment *and* any claims that the plaintiff might want to raise in future lawsuits against employees of the State of Wisconsin or the DOC for events that occurred before May 10, 2022.

The settlement agreement states:

> 1. The State of Wisconsin will issue a check in the amount of ten thousand dollars ($10,000), made out to Denzel Rivers within 30 days of this agreement being fully signed.
>
> 2. In exchange for the consideration listed above, Rivers does hereby release and forever discharge the State of Wisconsin, the DOC, and the DOC's officers, agents, employees, successors, assigns, personal representatives and insurers (hereinafter referred to as the "Released Parties") from any and all action or actions, cause or causes of action, suits, debts, covenants, agreements, liabilities, rights, damages, costs, claims of interest, awards of attorney's fees, claims, and demands of every kind and nature whatsoever, in law or equity, whether based on State or Federal law, based on any actions or omissions on or before the date this Agreement is fully signed by all parties.
>
> . . .
>
> 4. This Release Agreement shall also be deemed to be a covenant by Rivers not to sue the State of Wisconsin, the DOC, and the DOC's officers, agents, employees for any inaction or action related in any way to the Lawsuits. . . .
>
> 7. Rivers agrees that, in making this release, Rivers relies on Rivers' own judgment, belief, and knowledge as to all of the issues and all phases of Rivers' claims, including the nature and extent and duration of Rivers' injuries. Rivers warrants and acknowledges that Rivers is not relying on representations or statements made by any of the Released Parties or anyone representing or employed by them. . . .
>
> 10. Rivers has had an opportunity to review the Agreement with the advice of counsel, if he so chooses, and he agrees that he is entering into the Agreement fully and freely without coercion from any party.

Dkt. No. 19-1 at 2–3.

The language in the settlement agreement is unambiguous. The plaintiff agreed, in exchange for $10,000 from the State of Wisconsin, to "release *and forever discharge*" the State, the DOC and the DOC's officers and other employees "from *any and all*" acts, causes of action or claims "of *every kind and nature whatsoever . . .* based on *any actions or omissions* on or before the

date" of the settlement agreement. Id. at 2, ¶2 (emphasis added). There is nothing ambiguous about this language. The language is intentionally broad; it does not suggest that the release is limited to the defendants involved in the five lawsuits that the plaintiff had pending at the time. It says it applies to "the State of Wisconsin, the DOC, and the DOC's officers, agents, employees" and so on. Id. By signing the agreement, the plaintiff agreed that he had reviewed the settlement agreement, even though he was not represented by counsel at the time, and he agreed that he was entering into the settlement on his own accord. Id. at 3, ¶10.

The defendants cite Oliver, 2022 WL 1555241, as an example of a case where another court in this district upheld a similar settlement agreement to bar the plaintiff (also an incarcerated person) from bringing future lawsuits against State defendants. The plaintiff in Oliver signed a nearly identical settlement agreement in a previous case. Oliver, 2022 WL 1555241, at *1–*2. That agreement provided, in part:

> Plaintiff releases and forever discharges the State, the DOC, and their officers, agents, employees, successors, personal representatives, and insurers (the "Released Parties") from any and all manner of action or actions (including cause or causes of action, suits, debts, covenants, agreements, liabilities, rights, damages, costs, claims of interest, awards of attorney fees, claims and demands of every kind and nature whatsoever, in law or equity, whether based on State or Federal law), that relate to any action or inaction—of any State of Wisconsin or DOC employee—that took place on any date before this Agreement is fully executed.

Id. at *2. The agreement also included a "Covenant Not To Sue," in which the plaintiff promised "not to sue any of the Released Parties in connection with a claim related to an action or inaction 'of any State of Wisconsin or DOC

employee' that took place 'on any date before this Agreement is fully executed.'" Id.

The Oliver court determined that the broad language of the settlement agreement was clear, and it barred the plaintiff from bringing "an action against State of Wisconsin and DOC employees arising out of events that occurred between October 2019 and March 2020, which was a period before the agreement was fully executed." Id. The court explained it previously had determined that even though the plaintiff did not have counsel when he signed the agreement, "a court has no authority to relieve an unrepresented party from the consequences of a contract he signed unless one of the usual grounds for setting aside a contract (such as fraud, mutual mistake, or duress) is shown." Id. at *3 (citation omitted). The plaintiff did not assert that any of those grounds for setting aside the contract was present, and the court did not find evidence of fraud or other misrepresentations. Id. The court reiterated that the language of the settlement was "so clear" and was "plain and easy-to-understand." Id. The court enforced the settlement agreement and dismissed the plaintiff's new case. Id. at *4.

Even more recently, the Seventh Circuit Court of Appeals upheld a settlement agreement also nearly identical to the plaintiff's. In Buford v. Goeser, Case No. 23-1395, 2023 WL 8274531, at *1 (7th Cir. Nov. 30, 2023), the plaintiff (an incarcerated person) sued four employees of the DOC for violating his constitutional rights during a strip search in 2015. The defendants countered that the plaintiff's claims were barred by a settlement

agreement that he signed in April 2020 in another lawsuit. Id. The defendants asserted that the settlement agreement released the State of Wisconsin, the DOC and their employees for any actions that occurred before the parties signed the agreement. Id. The court observed "the broad scope of claims released:"

> Plaintiff releases and forever discharge[s] the State, the DOC, the Defendants, and their officers, agents, employees, successors, personal representatives, and insurers . . . from any and all manner of action or actions . . . that relate any action or inaction—of any Wisconsin or DOC employee—that took place on any date before that agreement is fully executed.

Id. The court pointed out that the agreement, like the one in Oliver and the one in this case, included a "covenant not to sue" that precluded the plaintiff from filing suit against "any of the released parties for actions that took place before the agreement's effective date." Id. The Seventh Circuit found that the district court had "appropriately determined that Buford released his claims when he signed the settlement agreement forgoing suit against Department employees for actions that preceded April 2020." Id. There was "no question that Buford's claims relating to the 2015 strip search occurred before the settlement was executed in 2020." Id. The court affirmed the district court's dismissal of the claims based on the settlement agreement and release. Id. at *1–*2.

The decisions in Oliver and Buford are instructive. As in those cases, the language in the settlement agreement here clearly forecloses the plaintiff from bringing suit against the State of Wisconsin, the DOC or any of their employees based on events that occurred before May 2022, when they signed the settlement agreement. The plaintiff's complaint alleges violations of his rights

12

Case 2:23-cv-00503-PP   Filed 02/27/24   Page 12 of 16   Document 40

arising from events that occurred in August and September 2021, over eight months before the parties signed the agreement. The named defendants are DOC employees who work or worked at Waupun. There is no question the settlement agreement applies to the plaintiff's claims brought against these defendants.

The plaintiff counters that he understood the agreement to release only the defendants he named in his five dismissed lawsuits. He claims that those are the only persons whom he believed were the "released parties" that he was agreeing not to sue. This argument is without merit. The settlement agreement clearly and unambiguously says that "the State of Wisconsin, the DOC, and the DOC's officers, agents, employees" and so on are "the 'Released Parties'" for purposes of the agreement. Dkt. No. 19-1 at 2, ¶2. The settlement agreement does not name the defendants in the five previous cases or anywhere suggest that its terms or effects are limited to those persons. The agreement's repeated use of broad language ("any and all," "every kind and nature whatsoever" and "any actions or omissions") bolsters this conclusion and makes clear that the agreement bars the plaintiff from bringing suit against *any* State or DOC employee for events that occurred before May 2022. The plaintiff does not suggest that he was deceived or defrauded into signing the agreement (although he did not have an attorney's assistance). Because the agreement is unambiguous, the court cannot consider extrinsic evidence, such as the plaintiff's assertion about his intent when he signed the settlement agreement. See Oliver, 2022 WL 1555241, at *2; Huml, 293 Wis. 2d at 196.

13
Case 2:23-cv-00503-PP   Filed 02/27/24   Page 13 of 16   Document 40

The settlement agreement attached to the answer applies to the claims in this case. The court will grant the defendants' motion for judgment on the pleadings, enforce the settlement agreement and dismiss this case with prejudice.

### III. Plaintiff's Motions

The plaintiff seeks injunctive relief barring officials at the Milwaukee Secure Detention Facility from opening or inspecting his legal mail. Dkt. No. 23. The court cannot grant this request because it is unrelated to the claims that the court allowed the plaintiff to proceed on in this case; those claims involved Waupun officials' failure to protect him from self-harming. See Oliver, 2022 WL 1555241, at *4. Even if it could grant the request, the court is dismissing this case with prejudice, so the plaintiff's request for injunctive relief is moot.

The plaintiff asked the court to appoint him counsel to help him respond to the defendants' motion for judgment on the pleadings. Dkt. No. 28. But this motion is moot because the plaintiff filed a response to the defendants' motion. Even if he had not, the settlement agreement clearly and unambiguously applies and bars the plaintiff's claims.

The plaintiff filed a motion offering to voluntarily dismiss his claim in this case in return for the "courts to clear plaintiff of the strike plaintiff may have in recent dismissed claim, 'Rivers v. Demers, et al 23-CV-453-PP.'" Dkt. No. 39. (capitalization and underlining omitted). This motion is moot because the plaintiff did not receive a strike when the court dismissed Case No. 23-cv-453.

Even if he had, the court could not "remove" the strike in exchange for the plaintiff's voluntary dismissal of this case.

## IV. Conclusion

The court **GRANTS** the defendants' motion for judgment on the pleadings. Dkt. No. 24.

The court **DENIES AS MOOT** the plaintiff's motions for injunctive relief, for appointment of counsel and to voluntarily dismiss this case with stipulations. Dkt. No. 23, 28, 39.

The court **ORDERS** that this case is **DISMISSED WITH PREJUDICE**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A).

If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The Court of Appeals may assess the plaintiff a "strike" if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court

15

Case 2:23-cv-00503-PP    Filed 02/27/24    Page 15 of 16    Document 40

(except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 27th day of February, 2024.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**